Reginald Gundy v. City of Jacksonville, Florida Reginald Gundy v. City of Jacksonville, Florida Good morning, your honors. Neil Henrickson on behalf of the appellant. May it please the court. Your honors, this case sets in the context of the Supreme Court case, Town of Greece v. Galloway, where legislative, the law in our country on the legislative invocation was clarified from the Marsh v. Chambers case. In that case, which was detailed in a memorandum by the City of Jacksonville's general counsel's office in September of 2014, makes clear that when the government permits prayer and allows prayer at a legislative session as an invocation, it must allow the person giving the invocation to address his or her god or gods as conscious dictates. And Justice Kennedy, in the Town of Greece case, specifically noted how the Town of Greece, in coming up with their lack of rules, their process for having an invocation, made clear that they avoided giving prescriptions, guidance, rules about the invocation so as to avoid First Amendment free speech or free exercise claims. And here, we have a circumstance where the top authority at the city council meeting has intervened and given his directive and shut down an invocation. We know from the day after the invocation, on March 13, 2019, from the city council president's Twitter statement, his perspective that the opponent of his candidate of choice in the upcoming mayoral election, he never envisioned, this is the Twitter statement, the council members stooping so low to find a pastor that would agree to such a sacrilegious attack, politicizing something as sacred as our invocation. It obviously was a last-ditch effort to try to revive a failed term in campaign. Fortunately, I control the microphone. Again, here we have perspective on what the authority who shut down the invocation was thinking about that invocation the day before. And we'd submit that it colored the entire perspective of that invocation and creates precedent that would allow for a particular city council president's view of what the invocator is presenting to govern and guide how they decide to either allow to go forward in invocation or not. And so in terms of that, we have the district court, which we believe, consistent with this court's ruling in Cambridge Christian School, found. We have private speech at issue here. We think it's consistent that, with this court's ruling in Cambridge Christian, that. Since you got to that point about whether this is a public forum or not, let me ask you this. So this seems to me to be a non-public forum, right? Not anybody can get up there and speak. What do you say about that? Yes, the district court did hold it was a non-public forum. A limited public forum in that you're inviting particular people in to present the invocation could present a merger of non-public forum or limited public forum. But we think that, in terms of private speech within this forum, we have the constitutional violation. Right, yeah. So let's assume that the district court got that right, that this is a non-public forum. There are certain things that the government can do in a non-public forum. And there are certain things that they can't do. One of the things that the government can't do is just be arbitrary within that. How does your claim go if this is a non-public forum? Well, and we argued, essentially, the facts that support that we have not a viewpoint-neutral finding or determination by the city council president when he shut down the invocation. And how do we know it's, and there were material facts in dispute at the summary judgment stage, that it was not viewpoint-neutral as required by precedent of this court, by the Supreme Court and Rosenberger and other cases, that he viewed it as the pastor giving an invocation that was to be supportive of a political candidate. We know that from his Twitter statement. We know that from the legislation. We know that from his own testimony. And in fact, if that's the guide that goes forward into the future in how invocations can be ruled on by this top authority for the city of Jacksonville, we have a very dangerous situation for First Amendment free speech and for free exercise in this context of the non-public forum. So he says, so the city council president says that he was applying really a content-neutral viewpoint, or it's a viewpoint-neutral restriction. It's really about content. And that is that solemnizing and sort of good government speech is allowed, but scurrilous attacks and politicizing is not allowed. What do you say about that? That it's absolutely arbitrary and haphazard the way it was applied here, that it picks and choose. And we know from his testimony, the city council president's testimony, about some of the language from Dr. Lowe's August 2018 invocation that he presided over, which he said was inappropriate, was political. I think that gives a view of the arbitrary and haphazard nature of what happened here. May I ask you a question? Of course. What if we deem this to be government speech as opposed to private speech? Well, I think in this circumstance, that because of the nature of an invocation, because of the Supreme Court precedent, town of Greece, this has to be deemed a private speech in terms of the circumstance. But in the- Wait a minute, counsel. Is this non-government speech, flat out, no, can't be a non-government speech? That's correct. This is private speech. In the invocation, the invitation to the clergyman, they give the invocation, invited non-government speech. Correct.  And town of Greece, which says, once you open the door in this forum for a legislative invocation, once that door is open, you must let the invocator present as their conscious dictates. And what we have here is precedents that a- In other words, there's no limit of what he could say. That's correct. On the other hand, there is a- Other than causing a ruckus or violating the law, as it were. There's no limit. There's a limit in terms of what Marsh versus Chambers, what town of Greece says- Tell me what the limit would be. Well, if someone disparaged another religion- Put aside tweets and all that. Just take the case as it occurred. What limit is there? The limit would be, I can't come up and start proselytizing or to give an invocation under town of Greece, Marsh versus Chambers, at a legislative invocation, and disparage another religion. Well, for a non-public forum, I mean, the government can have certain content neutral- I mean, viewpoint neutral restrictions, right? So they could say, for example, you know, you can't yell and scream, it can only be five minutes long, it has to be of the nature of an invocation. You know, it couldn't be you can't read the phone book, right? I mean, they could make those kind of viewpoint neutral restrictions on the invocation period, right? Yes, and as long as they're not invoked in a haphazard or arbitrary manner, and as long as they're consistent with Supreme Court precedent on, and our First Amendment. And here, we have actually- Well, of course, the speaker controls the president of the council, the speaker. If a speaker wants to get out of hand, he's in control. Well- In this kind of a setting. This is a practical matter. He's in total control, because he can inflame the presiding officer, whatever it is. The speaker's in control. Well, then what? The city council president is in control of the microphone. I know that, but there are also security guards there that the city council president controls. I've been to a few of these meetings. That's right, and so, but what we have here, though, is someone in this testimony, and again, this is on motion. So we have the motion for summary judgment with material facts in dispute for a fact finder to determine, for a jury to determine, was this a arbitrary haphazard act? Was this an invocation that implicated First Amendment rights? But we didn't have that opportunity, because the court- Do you agree that it's a matter of law that it's a non-public forum? Yes. It's a matter of law that it started out as government speech. It's the, no, that- The invitation, on the surface, the invitation to give an invocation was non-government speech. It was non-government speech. It was private speech. I mean, it was government speech. Well, no, and I think we have to look to town of Greece. We have to look at Marsh and say when someone is invited for an invocation, that that invocation, then, the government has to stay away from. It's not government speech. That's correct. It's not government speech. And in this kind of setting, we have, so we have- Let me ask you a question, counsel, because I don't remember, and I don't have it in front of me, I think it's Leake versus Dinkard, where this court wrote an opinion that talked about a parade that was sponsored, ended up being sponsored by the Veterans of Wars, and then the city ended up sponsoring the parade, and that the parade then became government speech. So how is a legislative session not government speech when you are asked and invited to speak in a limited public forum? So in Leake, we had the Confederate group that came on board, and your honor was on that panel. That case is far distinguished because you have the case law, when you look at government speech, excuse me, the forum, and this court in Cambridge Christian School went through the detailed analysis, and an analysis that the district court went through, the history, the endorsement, the control, those factors were looked at by the district court here, and found a non-public forum. So we have distinct from Leake, where you did have an analysis by the panel that you were on, your honor, that the history, the endorsement, the control led to that being a, not a non-government forum, but a government forum that would make that presentation by the sons of the Confederacy government speech. Here, we have an invitation for the invocation. We follow the guidance of Town of Greece, and we see that the presentation has to be hands-off. And in fact, the city council knew that. They knew that from 2010. They knew that from the opinion on the Marsh versus Chambers case. They knew that from the September 2014 memo on the Town of Greece case, that they had to be hands-off. They couldn't control the conscious of the person giving the invocation. They had to be able to speak as God told them to speak, or whatever God that might be. And the kind of precedent that this set of facts presents, and this case is really in line with this, the Cambridge Christian case, in that we now have, but we have a set of facts that show the non-public forum and the private speech as the district court found. I'm out of time. Thank you, your honor. Thank you. Good morning, and may it please the court. My name is Craig Fieser. I'm here on behalf of Appalachia City of Jacksonville and former president, former council president, Aaron Bowman. I want to kind of shift the order of my presentation a little bit to start with the government speech issue, because we didn't cross appeal here. We didn't challenge what the district court's analysis was on the non-public forum issue. And but we do still believe this is government speech. OK, let me ask you a question about that. That's a hard sell for me. One of the three things that we have to look at when assessing whether something is government speech is endorsements, right? That's like the second factor of three. Can the government endorse a message consistent with the Establishment Clause that Jesus Christ is Lord? I believe that invocations are sort of unique in terms of- No, that's not what I'm asking. When you're saying when the pastor got up there and spoke, and has historically been done at the city council meeting, that it's the government speech, right? So I'm asking you, let's look at the endorsement factor. Can the government actually, consistent with the Establishment Clause, endorse the message that is being delivered from the podium? The government cannot endorse one religion. OK, so that's one whole factor that goes out. What about the third factor, which is control, consistent with the Establishment Clause? Can the government control what the pastor or whoever is called to speak? Can the government tell them what to say? The government cannot control the prayer. OK, that's two of three factors that go out. So what about the first factor? The first factor is history. The history over invocations is super messy. But I think we've got two of three factors saying this is not government speech. I mean, what do you say about that? Yes, Your Honor. It does not fit neatly into the box that this court has talked about in Cambridge Christian, and more recently in the Lee case. The court did say, however, those factors are not conclusive. They're not hard and fast. They're just sort of rules of thumb to look at to decide whether something is government speech. We would submit that invocations are a unique form of government speech in that, as Judge Schoflat noted, first of all, you have an appointed council chaplain that invites, and here the way we do it in the city of Jacksonville is they have each council member sort of take a turn inviting somebody from the community to come and give an invocation for city council to bless its meeting. So as the Third Circuit said in the Fields case, it's for the government. It's invited by the government. It's to bless their proceedings. It's government speech. It fits into that idea that this is strictly for the government and not for the public. So while the three factors don't fit neatly, I would argue that the history factor, there is a long history of invocations in this country. And the cases talk about that going way back. And that doesn't violate the Establishment Clause. Sure, the government cannot proselytize, cannot advance one religion over the other, cannot disparage one religion over the other, those kinds of things. But it can, and my colleague talks about the town of Greece and the marsh in the Galloway cases, it can control the content of what's going on in the invocation and limit it to a prayer, to a solemn prayer for council. And I think I completely agree with you on that. But I guess even if we said this is a non-public forum, which it clearly is non-public. I mean, you can't just go up there and speak from the microphone. I mean, in a non-public forum, the government has the ability to have content restrictions and things like that. So I mean, all the stuff that you're suggesting the government could control here would still apply in a non-public forum, right? Absolutely. Even if this is not government speech, it's a non-public forum. And all you had here, and if you look at the facts of this case, all you had here was a, really it was just an interruption. It was, I'm going to ask you to please keep this prayer spiritual, followed by turning off amplification, which is for council to hear the person giving the invocation. That's it. The speech went all the way to the very end, to amen, which we don't really understand how the First Amendment could even be implicated when the entire speech was never even suppressed in any way. But regardless, the only time that Council President Bowman chimed in was when all of a sudden, you have a speaker giving an invocation saying things like, the council should apologize for slavery. The city doesn't award contracts to black people. The mayor's office is engaged in cronyism, and backroom deals, and nepotism. These are things that have nothing to do with an invocation whatsoever. And certainly, the town of Grease case talks about, yes, you can't regulate a prayer without violating the Establishment Clause. But you can limit an invocation to a prayer, to a prayer. May I ask you a question? Yes, Your Honor. The statements that you just said that were said during the invocation about contracts not being awarded, x, y, and z, that's something that can be said by a citizen during the city meeting, correct? Absolutely. There's a public comment section in every council meeting, sure. Correct. But the invocation is something that is an invitation by the government. That's right, Your Honor. That's right. And it's an invitation. And if you look at the web policy, which is in the record, and it's the only policy that's ever been followed by the city council as far as how invocations are to be conducted, it talks about, we're going to be all-inclusive. We're going to invite all kinds of members of the community to come in, different religions, to give invocations for the purpose of blessing, and elevating, and lifting up, and providing a message to council prior to its meeting. Now, keep that in mind as well. Invocations occur before the meeting even starts. So they're clearly not public speech. They're for specifically for the council, the legislation. Yeah, no question. I mean, I don't see anybody suggesting that this is an open public forum at this point. So let's just assume it's non-public forum. So it's invited speech. You can impose regulations on it, et cetera. One of the problems I have with this case that makes it sort of stand out from other cases is that the city council president wasn't enforcing any particular policy, that he was sort of making up the policy as he went. And the plaintiff here argues, look, one, that's, you know, looks to us like this is a viewpoint discrimination, since we don't have a policy that he's enforcing. It looks like he was doing it on viewpoint. And two, it looks like it was sort of arbitrary. And maybe in this particular situation, this has to go to a jury, or this has to go to a fact finding. I used to be in front of a judge. But this isn't a summary judgment case. What do you say about that? Well, first of all, we have nothing in the record. And we know of no occasion where this kind of thing has ever happened before. So you have a council president who starts to conduct a meeting. And the invocation starts. He doesn't know what the person giving the invocation is going to say. And all of a sudden, veers into these kind of really vitriolic kind of hostile, attacking type comments, and decides, well, wait a second. This is an invocation. All he does is kind of interrupt him at that point. And this is after Pastor Gundy had been doing the video for four minutes. He'd been going for four minutes. And finally, he says, can we try to get him back on track to a prayer? Can you please keep this to a prayer, spiritual? And then he kept going and going and continued attacks and saying other vitriolic things. And finally, he just said he just turned off the microphone, after which he goes for another minute and then says amen. There isn't any policy that allowed for that in the past, because it had never happened before. But you had a council president who, by his own testimony, had pretty much everybody else sitting up there in the council looking at him like, are you going to do something about this? Hearing things that they've never heard during an invocation before. Opposing council talks about Dr. Liu's invocation, which happened in late 2018, three or so days after a mass shooting at the former Jacksonville Landing. And you can read that one, too. It's in the record, where he's blessing the council, please lift them up. We pray that they do work to make the city a better place. That's an invocation. That is a prayer for council's benefit to bless the council in the legislative work they are about to do. That's what they talk about. And that's what the court talked about in Marsh and in town of Greece and all those cases. That's what an invocation is. President Bowman is hearing an invocation he's never heard before. And as far as we know, it has never been done before. It has nothing to do with that. It's way out of bounds. And he just decides, I need to do something to try to get this back on track. And that's literally all he did. Never stopped him from even giving the invocation. I guess, and here's, I mean, I think that's a perfectly reasonable story and a perfectly reasonable way to look at the record. But it seems like the plaintiff is saying, well, yeah, that's one way to look at the record. But another way to look at the record is that the city council president didn't like the fact that this pastor was saying things that were supportive, sort of tangentially supportive of this person running against the mayor. And that's why his microphone was cut off. It didn't have anything, it was just sort of an excuse that he made that I think they sort of posit, like if the prayer had been, this mayor is great, he's doing a great job, yay for the mayor, that the city council president would have said, fine, that's great, I love the mayor. But it's the attack on the mayor that he has a problem with. I mean, what do you say about that being a factual issue? And they use the day after the fact tweet as sort of their evidence of that, which that's out there. But that's really, if you read the tweet, even though it's kind of harsh, it's really the former president saying, I can't believe that somebody brought a pastor in here to give this kind of an invocation. They want to tie all this to the ongoing mayor's race. Keep in mind that this is going on during early voting. There are nine members of council who are also up for election. There's a mayor's office race going on, of course, which is going to be decided about a week later. So this is all going on during a very political season. They want to make it all about the mayor's race, but that's not all Pastor Gundy said. He said a lot of things that specifically attack not only the city, but city council itself, as nine members are sitting there running for re-election as well. So it was a very politicized, very politically charged invocation or speech that the council president had never heard before. So he's not basing, and he actually  He testifies that I don't care who he's attacking or what he was doing. If he was doing, if he was attacking the other council member, I would have done the same thing because it's not appropriate as part of an invocation. That's the only evidence you have. You don't have any. May I ask you a question? Because I just want to understand. So if we turned off the microphone right now for you and you kept talking, the people in the courtroom could still hear you. So my understanding is his microphone was shut off, but people still could understand or hear the rest of the invocation. Yes, Your Honor. He was not physically removed by security. He was not, Your Honor. No, he was not. He was not stopped. He wasn't silenced. He wasn't told to shut up. He wasn't removed or anything else. He was simply denied amplification in front of the body that actually he was supposed to be giving the invocation for. I'm not sure if your Zoom call froze or not. But so that's all that happened here. In our view, that's really- Would you actually just hang on one second? Let's just, is our IT guy, he's been here all week. I can hear, Andrew. OK. All right, you're just frozen on our screen. Yeah, our view is- I hope I'm frozen in a good way, not in a bad way. You look fine. Our position has been that that's not even a first, that doesn't even implicate the First Amendment. He gave an entire speech in front of the body that he was supposed to be giving it for, and they all heard it. We know they all heard it. One way we know they all heard it is that it was actually, a court reporter actually made a transcript of the entire speech that Pastor Gundy gave, and nobody disputes it. It's attached to the summary judge of motion. It's not, there's no dispute that that's what he said. And we know that he went all the way through it and said everything he wanted to say all the way through to I met him. Let me ask you a question about that, because I mean, this is such an odd case in this circumstance. I mean, usually these are challenges to policies and nothing ever, you know, it's that kind of thing. What are, I mean, how do we fit that into a rubric? He was denied amplification, so therefore that's not a free speech infringement. Like what, how do we, what does that mean, I guess? Yeah, that, I think that's, that goes to what the district court initially did on the motion to dismiss, was it just couldn't find anything in any sort of case law that would. But that's, that's why I asked that question because normally you're in these kinds of situations, you're gonna have someone physically removed from the podium, right? And, and, or, you know, made to step away and you can't continue your speech. Yes, Your Honor, yep. So this is a, Judge Brasher's correct. This is sort of a strange. It is. Factual scenario because he's able to continue with the speech until the end. Yes, Your Honor. Yeah, and the district court pointed out, and we would point out too, the Jones case from this court is a good example of a person who gets up there, they're during a public comment, which is in that case was supposed to be limited to agenda items and not sort of go off track. And he's wearing a political t-shirt, vote for so-and-so, and he's actually removed and becomes disruptive and is arrested because initially because of the political speech. You don't have anything like that here. You have a, as Bowman testified, an attempt to try to sort of guide him back into actually, you know, giving a blessing, giving a prayer instead of giving a speech about political topics or topics that are controversial or some sort of, and that was Bowman's intent with his, you know, so-called policies after the fact seven weeks later and then he actually tried to make it into legislation. He testified and it makes logical sense. He's trying to protect invocations, period. Because in his view and in our view as well, if this kind of thing is allowed, anybody can just get up and give an invocation and say anything they want. They could stand up there and say, dear heavenly father, please vote all these people out of office tomorrow and there's nothing council can do about it. They can't even interrupt him and say, wait a second, can you please just give us a blessing? So I think, I mean, I'll just say, I mean, I think if you adopted a policy that said that, that would be fine, right? So I guess just the only, sort of my main issue on this, I'll just put all my cards on the table, is like I said, this is not a pre-existing policy that's enforced. This is sort of a question about the subjective intent of the council president and why he did what he did and what kind of policy he was enforcing in his head. Is this not something, just your best case for why this is not something that has to go to a fact finding and can be resolved on summary judgment? Right, well, first we know without that policy, pre-existing policy or practice or custom, the city has to be out of the case. I mean, there's no way you can have municipal liability without something like that being. Well, I mean, I think the fact that the council president is there might give you that. I think maybe a qualified immunity, it helps, but let's assume that the existing policy is that the council president can do what he wants to with a microphone, but he says he did what he wanted to with a microphone for this reason. They say it was for another reason. Yeah, you have really only have two policies that did exist here. You have the web policy or the policy of how we're gonna do invocations, which is really blessed by a ton of grease and also marsh. And then you have sort of the council rules that do allow the president to preside over meetings and protect the decorum and to protect, you know, against disruptive things and things like that. And the district court said both of those things are certainly constitutional on their face. So it would have to be, you would have to have some sort of arbitrary or haphazard or some kind of unreasonable application of one of those two policies. Here you have an isolated one-time incident where this kind of thing happened and it had never happened before. And you had a council president that simply was trying to prevent it, one, from happening again, and two, in the moment when it's actually happening. There's no evidence that in that moment he's thinking, oh, this guy's up there supporting this other council member and he's attacking the mayor and he's doing this and that. The evidence is he's attacking the legislative body. He's saying vitriolic things. He's not giving a blessing. I need to do something about this and at least try to guide him back into actually giving a blessing. And if he's not going to do that, send a message that, hey, this is not a blessing. But he's still, again, at the end of the day, he's still got to say everything he wanted to say all the way through to amen. And his speech was never even suppressed in the first place. Unless there are any further questions, we ask that you affirm both orders of the district court. Thank you, Your Honor. Thank you very much, counsel. Thank you. Just to address, actually, counsel's argument is exactly why this needs to go to a fact finder, this viewing of the facts. We know from the testimony of Pastor Gundy in dispute that he didn't finish his prayer. He didn't finish the invocation as he presented. We have the written prayer before coming to the council. He testifies he didn't finish it. We have the characterization by the city council president that's in the context of him viewing the city council president as the other mayoral candidate, Ms. Brochet, as having put the pastor up to this. We have the fact that he viewed Dr. Lowe's, certain of Dr. Lowe's statements, as being improper, inappropriate. What would he have done? Had it not been seven days before the March 19th mayoral election and city election? All of these facts are for a fact finder. Judge Lagoa had a case. Counsel, we have some other issues besides the fact finder. Of course. Well, no, this is a bizarre case. I speak for myself. The speaker drives the entire constitutional discussion. The speaker does. The more violent the speaker, the more off-base the speaker, whatever it is, is going to engender a response. There is no policy in my mind that could say what the council president should say. Might be. But whatever he does is arbitrary. I mean, it's responsive to the speaker. That's right. No, no, no. So I'm struggling in my own mind. Where does the law leave us in that circumstance? It leaves it. When we have a non-public forum, and you have an invocation that starts out as an uplifting for the city council, and then it goes awry. I appreciate that. And this is where we have these material facts, as Your Honor's struggling with, that say, is it viewpoint neutral? Is it arbitrary and haphazard? The question is, what can the city council president do when he's baited? No, I'm serious. Yes, of course. He could shut the mic down if it's viewpoint neutral, if it's not arbitrary and haphazard. This is so much in the heat of the time that nobody sits there and analyzes and pulls out the cases sitting on the bench while the man is going crazy. I'm serious. Well, I wouldn't submit it. There's no case in the sky that the city council president could look to just for an answer to, what do I do in this situation? He does it. Do you understand? I understand, Your Honor. So sending it to a jury, and I speak for myself, sending it to a jury with no guidance of what the law is, it'd be preposterous. May I respond, Your Honor? Yes, you may. Two things. One, there is law, right? It has to be viewpoint neutral. It can't be arbitrary and haphazard, as it was. And there were no rules that you had to follow. And it can't be government speech if it endorses religion, et cetera. But that's all viewed after the fact. Whether the invocation is government speech, or can't be because it establishes religion, or et cetera, et cetera, is the after the fact view of what happened. It's not up front. Well, that it's private speech is up front, Your Honor, under town and again on the issue. What if the speaker started the invocation as a prayer, and then it sort of went off on a tangent that women should no longer have the right to vote? The council members that are women are harlots. I mean, at what point, because as Judge Shoflat says, he's correct, there's a baiting process. At what point can someone be giving an invocation that is really, in essence, a defamatory speech? And I appreciate that, Your Honor, but that's not our case. Because our case is, this was not viewpoint neutral. I'm asking you to answer the question, because we have to write an opinion in this case. And the opinion is going to be precedent for three states. Of course. So please answer my question. So the city council president could shut the mic off as long as it was viewpoint neutral. It was not arbitrary and haphazard. And that's what it was here. And what would be viewpoint neutral? If someone is saying women should no longer have the right to vote, or councilwoman is a harlot, is that viewpoint neutral? In terms of viewpoint neutral, that is, from the city council president's view, that would be inappropriate and not compliant by the speaker. What is viewpoint neutral for your clients? What is the definition of your client of viewpoint neutral? My client needs to speak his conscience to his god in terms of making the invocation. The city council president's viewpoint needs to be neutral in terms of how he controls that private speech in this non-public forum. And so we cite this Mobley, this US District Court case out of the Eastern District of Pennsylvania. I know it doesn't bind this body. However, it does deal with a city council president shutting down the mic on city council members or causing a claim to go forward. It was on a motion to dismiss, a 12C motion. But viewing that as not allowing someone to complete their speech in that setting. So in this context, we have guidance from the Supreme Court. We have guidance from the First Amendment of our Constitution on how this should proceed and how an opinion could be fashioned so that there is a semblance of order in terms of how an invocation goes forward. I hope that answers a little better than I did before, Your Honor, the question. Thank you very much. Thank you both. Thank you, Your Honors. The court is adjourned. Thank you very much to everyone in Jacksonville for having the panel there this week. Thank you. Thank you. All rise. Recording stopped.